(No. 6357. December 12, 1936.)

In the Matter of Appeal of the WINTON LUMBER COMPANY, a Corporation, from an Order of the BOARD OF COUNTY COMMISSIONERS OF KOOTENAI COUNTY, IDAHO, Bearing Date December 14, 1934, Relating to Assessment of Certain Mining Reservations.

[63 Pac. (2d) 664.]

Miles F. Egbers, Prosecuting Attorney, Kootenai County, for Appellant Board of County Commissioners.

Whitla & Knudson, for Respondent.

HOLDEN, J.—December 18, 1926, the Winton Lumber Company conveyed to the United States government certain lands situate in Kootenai county, Idaho, reserving to itself all oil and mineral rights in said lands. On account of such reservation of the oil and mineral rights, the United States government deducted 25¢ per acre from the purchase price.

In September, 1934, the assessor of Kootenai county entered upon the personal property assessment-roll for taxation purposes the mineral reservations of the Winton Lumber Company set forth in the deed to the United States government, assessing said mineral reservations at $1 per acre.

December 3, 1934, the Winton Lumber Company filed with the board of county commissioners its "Petition for equalizing a personal property tax and to disallow claim of personal property tax assessed on real estate before the Board of County Commissioners of Kootenai County, Idaho, sitting as a Board of Equalization," in which petition the Winton Lumber Company protested against the assessment as "grossly excessive" and prayed that the assessment be reduced to 25¢ per acre, and that the property be assessed as real estate instead of personal property.

The board of county commissioners at its meeting December 14, 1934, heard and, by order, denied the petition and, on January 12, 1935, the Winton Lumber Company appealed from the order of the board of county commissioners to the district court in and for Kootenai county.

December 5, 1935, the matter was heard by the court. Thereafter, to wit, December 7, 1935, findings of fact and conclusions of law were made and filed and decree entered in favor of the Winton Lumber Company and against the board of county commissioners. The lower court held that the rights to all oil or other minerals or mineral substances, reserved by the Winton Lumber Company in and to the lands conveyed by said company to the United States, are real property and assessable only as such; that the assessment is "erroneous and grossly excessive" and not uniform;

that for assessment purposes no greater assessment than 25¢ per acre should be permitted; that said assessment as personal property should be cancelled and the officers of Kootenai county be directed to re-assess said property as real property at not to exceed 25¢ per acre. From the judgment of the district court, the board of county commissioners of Kootenai county appeals.

It is contended by appellant that the legislature by statute (secs. 61–108 and 61–109, I. C. A.) defined and classified both real and personal property for purposes of taxation, in order to avoid double taxation, and that rights to oil or other minerals or mineral substances reserved by grants were defined to be and classified as personal property, for purposes of taxation, with intention to provide a practical and inexpensive method of levying and collecting taxes on property of that character. Section 61–108, *supra,* reads as follows:

*"Real property defined.*—Real property for the purposes of taxation shall be construed to include land, and all standing timber thereon, including standing timber owned separately from the ownership of the land upon which the same may stand, and all buildings, structures and improvements, or other fixtures of whatsoever kind on land, including water ditches constructed for mining, manufacturing or irrigation purposes, water and gas mains, wagon and turnpike toll roads, and toll bridges, and all rights and privileges thereto belonging, or in anywise appertaining, all quarries and fossils in and under the land, and all other property which the law defines, or the courts may interpret, declare and hold to be real property under the letter, spirit, intent and meaning of the law, for the purposes of taxation: provided, that land included in public highways, as defined by sections 39–101 and 39–103, shall not be subject to assessment for taxation."

And section 61–109, *supra,* reads:

*"Personal property defined.*—Personal property for the purposes of taxation shall be. construed to embrace and include, without especially defining and enumerating it, all goods, chattels, stocks and bonds, equities in state lands, easements, reservations, and all other matters and things of what-

soever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal property under the letter, spirit, intent and meaning of the law, for the purposes of taxation, and as being subject to the laws and under the jurisdiction of the courts of this state.''

Appellant states, and we think correctly, that the record presents but one question: Are mineral ''reservations,'' for purposes of taxation, real or personal property?

The determination of that question depends upon the construction of section 61–109, *supra*, interpreted in the light of section 61–108, *supra*. It is conceded that the power of the legislature, in the premises, is plenary. It could have defined and classified ''reservations,'' for the purpose of taxation, as either real or personal property. That the legislature intended that ''reservations'' should be taxed, is not questioned. The intention to provide for the taxation of ''reservations'' being conceded, as it must be, it is most significant that the legislature, with the matter as to whether ''reservations'' should be taxed as real property or as personal property, under consideration, did not mention them nor include them in its definition and classification of real property. But it is contended by respondent ''that where the statute (sec. 61–109, *supra*) specifies that personal property includes 'equities in state lands; easements, reservations, etc.' that it means easements and reservations in the state lands. The reason for it is apparent and this construction conforms to the well known rule of statutory construction (*ejusdem generis*) that where general words follow the enumeration of particular class of persons or things, the general words will be construed as applying only to things of the nature enumerated.''

While, in cases coming within the reach of the principle of *ejusdem generis,* general words are read not according to their natural and usual sense, but are restricted to persons and things of the same kind or genus as those enumerated, the rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute

within narrower limits than was intended by the lawmakers. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmakers were thinking of a particular class of persons or objects, words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. The sense in which general words, or any words, are intended to be used furnishes the rule of interpretation, and that is to be collected from the context; and a narrower or more extended meaning will be given, according as the intention is thus indicated. The doctrine of *ejusdem generis* yields to the rule that an act should be so construed as to carry out the object sought to be accomplished by it, so far as that object can be collected from the language employed. (2 Lewis' Sutherland Statutory Construction, sec. 437, p. 832; Black on Interpretation of Laws, 2d ed., sec. 71, p. 215; *Nephi Plaster & Mfg. Co. v. Juab County,* 33 Utah, 114, 93 Pac. 53, 14 L. R. A., N. S., 1043; *Wiseman v. Affolter,* 192 Ark. 509, 92 S. W. (2d) 388; *Grosjean v. American Paint Works,* (La.) 160 So. 449.) Furthermore, the rule *ejusdem generis* must be considered in connection with the rule of construction that effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant. (2 Lewis' Sutherland Statutory Construction, sec. 436, p. 831; Black on Interpretation of Laws, sec. 71, p. 217.)

▆ Bearing in mind the unquestioned intention of the legislature that ''reservations'' should be taxed, and that ''reservations'' were not classified as nor defined to be real property by section 61–108, *supra,* would the application of the rule *ejusdem generis,* as insisted by respondent, make void the general words of the statute (sec. 61–109, *supra*) and result in defeating the purpose and intention of the legislature? In answering that question, it is necessary to consider sections 46–701, 46–713, and 61–105, I. C. A. Section 46–701, *supra,* provides as follows:

*"Reservation of mineral deposits to state—Terms defined.—* The terms 'mineral lands,' 'mineral,' 'mineral deposits,' 'deposit,' and 'mineral right,' as used in this chapter, and amendments thereto shall be construed to mean and include all coal, oil, oil shale, gas, phosphate, sodium, asbestos, gold, silver, lead, zinc, copper, antimony and all other mineral lands, minerals or deposits of minerals of whatsoever kind or character. Such deposits in lands belonging to the state are hereby reserved to the state and are reserved from sale except upon the rental and royalty basis as herein provided, and the .purchaser of any land belonging to the state shall acquire no right, title or interest in or to such deposits, and the right of such purchaser shall be subject to the reservation of all mineral deposits and to the conditions and limitations prescribed by law providing for the state and persons authorized by it to prospect for, mine, and remove such deposits and to occupy and use so much of the surface of said land as may be required for all purposes reasonably incident to the mining and removal of such deposits therefrom.''

Section 46–713, *supra,* provides that:

*"Sale of state lands containing mineral deposits.—*Lands in which minerals are contained and the surface of which has a value for other purposes may be sold under the provisions of Chapter 3 of title 56 of the Idaho Code relating to the sale of state lands, provided that in the sale of such lands there shall be reserved to the state all such deposits and that the right of the purchaser shall be subject to the conditions and limitations prescribed by law providing for the state or persons authorized by it to prospect for, mine and remove such deposits and to occupy and use so much of the surface of such land as may be required for all purposes reasonably incident to the mining and removal of such deposits therefrom.''

And section 61–105, *supra,* provides that:

''The following property is exempt from taxation: . . . . Property belonging to . . . . this state. . . . . ''

It will be seen that all mineral rights and mineral deposits are expressly reserved to the state; that in the *sale* of state lands all mineral rights and mineral deposits must be re-

served to the state, and that all property belonging to the state is expressly exempt from taxation. What reservations, then, did the legislature have in mind? Reservations in state lands which are nontaxable, or reservations in private ownership which are taxable? The latter, of course. Therefore, the application of the rule *ejusdem generis,* as strongly urged by respondent, would render void the general words of section 61–109, *supra,* and thus defeat the clearly expressed purpose and intention of the legislature that such reservations shall be taxed as personal property. But to hold, as we do, that where section 61–109, *supra,* specifies that personal property shall embrace and include ''equities in state lands, easements, reservations,'' etc., does not mean easements and reservations in state lands, gives full force and effect to all the words of the statute. And in so holding, the object sought to be accomplished by the legislature is carried out. It follows that easements and reservations must be assessed as personal property and not as real property.

Judgment reversed and cause remanded for further proceedings in harmony with the views expressed in this opinion. Costs awarded to appellant.

Morgan and Ailshee, JJ., concur.

Givens, C. J., and Budge, J., concur in the conclusion reached.