192 P.3d 1026

**AMERITEL INNS, INC., Plaintiff–Appellant–Cross Respondent,**

v.

**The POCATELLO–CHUBBUCK AUDITORIUM OR COMMUNITY CENTER DISTRICT, dba The Pocatello Convention & Visitors Bureau, Defendant–Respondent–Cross Appellant.**

No. 33448.

Supreme Court of Idaho,
Pocatello, April 2008 Term.

July 23, 2008.

Rehearing Denied Sept. 12, 2008.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for appellant/cross-respondent. Richard Hearn argued.

Lowell N. Hawkes, Pocatello, for respondent/cross-appellant.

HORTON, Justice.

This appeal arises from a declaratory judgment action concerning the permissibility of expenditures made by the Respondent Pocatello–Chubbuck Auditorium District (the District). AmeriTel Inns, Inc. (AmeriTel) appeals the district court's grant of summary judgment in favor of the District. The District cross-appeals the district court's denial of its request for an award of attorney fees. We reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in the case are essentially without dispute. The voters approved the District during the November 3, 1998 election and the District incorporated itself as a nonprofit corporation on November 18, 2002. The District's primary purpose is to market the Pocatello/Chubbuck Lodging Association and the cities of Pocatello and Chubbuck. The District is charged with the mission statement: "To create, promote & develop within the travel industry a positive awareness of what Southeast Idaho has to offer for the leisure and business traveler and to generate economic growth for the Greater Pocatello Area."

The District derives its revenue from two sources: grants from the Idaho Tourism Commission and a two percent room tax collected by local motels and hotels. With these revenues, the District engages in a bidding process to bring events to the Pocatello area. The District provides event organizers with "seed money" to entice the organizers to host events in the Pocatello area. The District sometimes rents and pays for facilities on behalf of the event sponsors. The District approves expenditures on the ability to put "heads in beds," or entice overnight visitors to Pocatello area RV parks, hotels, and motels. Consistent with its limited mission statement, the District has expended funds to "promote the tourism industry and to bring ... visitors and people to convene in Pocatello" the district has not constructed a public auditorium, exhibit hall, convention center, sports arena or facility of a similar nature, nor does it plan to do so.

On October 11, 2005, AmeriTel filed a verified complaint seeking the following relief: (1) a declaration that the District's expenditures of public funds to individuals and private entities exceeds its statutory authority and violates the Idaho State Constitution; (2) an order enjoining the District from making further expenditures for such purposes; (3) an order enjoining further collection of the auditorium tax on hotels and motels; and (4) an award of attorney fees and costs. On April 24, 2006, AmeriTel filed a motion for summary judgment. On May 9, 2006, the District filed its own motion for summary judgment. On August 3, 2006, the district court issued its memorandum decision granting the District's motion for summary judgment and denying AmeriTel's motion for summary judgment. The district court denied the District's request for an award of attorney fees. AmeriTel timely appealed. The District has cross-appealed the district court's denial of its request for an award of attorney fees. We reverse.

## II. STANDARD OF REVIEW

In reviewing a ruling on a summary judgment motion, this Court employs the same standard used by the district court.

*Sprinkler Irrigation Co. v. John Deere Ins. Co., Inc.*, 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006).

## III. ANALYSIS

■ AmeriTel raises two substantive issues on appeal: (1) whether the District's expenditures violate the statutes that govern auditorium districts; and (2) whether the District's expenditures are unconstitutional under the Idaho State Constitution. AmeriTel also asks this Court for an award of attorney fees on appeal. It is well established that this Court will not decide the constitutionality of a statute unless it is absolutely necessary for a determination of the case. *Poesy v. Bunney*, 98 Idaho 258, 264, 561 P.2d 400, 406 (1977). We will decline to address constitutional issues on appeal when the matter can be determined on statutory grounds. *State v. Doe*, 140 Idaho 271, 273, 92 P.3d 521, 523 (2004) (citing *State v. Young*, 122 Idaho 278, 283, 833 P.2d 911, 916 (1992); *Smith v. Dep't of Employment*, 100 Idaho 520, 521, 602 P.2d 18, 19 (1979)). Because we decide the instant case on statutory grounds, we do not find it necessary to address AmeriTel's arguments under the Idaho State Constitution.

### A. The district court erred when it held that the District's expenditures were not outside the authority granted to it under the plain meaning of I.C. § 67–4902.

■ AmeriTel argues that the plain meaning of I.C. §§ 67–4902, 67–4904, and 67–4922A does not authorize the District to market facilities that it does not own or operate

and that the legislative history of I.C. § 67–4902 demonstrates that the legislature intended the statute to encourage local communities to build public facilities. The District argues that AmeriTel's interpretation of I.C. § 67–4902 renders I.C. § 67–4912(f) a nullity and conflicts with I.C. §§ 67–4912(d) and (m). Additionally, when construing I.C. § 67–4904, the District urges this Court to consider the 1998 version of the statute that was in effect at the time the District was formed.

■ The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). The object of statutory interpretation is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007) (citing *Robison v. Bateman–Hall Inc.*, 139 Idaho 207, 210, 76 P.3d 951, 954 (2003)). The literal words of the statute provide the best guide to legislative intent, and therefore, the interpretation of a statute must begin with the literal words of the statute. *Id.* "In determining the ordinary meaning of a statute 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.' " *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). Moreover, the Court must consider all sections of applicable statutes together to determine the intent of the legislature. *Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

There are two statutes pertinent to this Court's analysis: I.C. § 67–4902, which contains the definition of an auditorium district, and I.C. § 67–4912, which enumerates the general powers of the board of directors of an auditorium district. Idaho Code § 67–4902 provides in relevant part:

An auditorium or community center district is one to build, operate, maintain, market and manage for public, commercial and/or industrial purposes by any available means public auditoriums, exhibition halls, convention centers, sports arenas and facilities of a similar nature, and for that purpose any such district shall have the power

to construct, maintain, manage, market and operate such facilities.

At the outset, we note that the legislature has not defined what constitutes a facility under I.C. § 67–4902. However, the legislature has provided a non-exhaustive list of facilities that comply with the statute. The list makes clear that an auditorium district must "build, operate, maintain, market and manage" some sort of physical facility. We are not asked to decide what type of building qualifies as a "facility" under I.C. § 67–4902. Instead, in the instant case, the parties dispute whether an auditorium district is required to construct and operate a physical facility, or whether it may simply market existing facilities within the community.

 The literal language of the statute requires that an auditorium district "build, operate, maintain, market *and* manage" public facilities. *Id.* (emphasis added). The word "and" is a "conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first." BLACK'S LAW DICTIONARY 86 (6th ed.1990). The legislature's inclusion of the word "and" indicates that an auditorium district is one that performs all of the listed functions in the statute. If the legislature wanted to make it clear that an auditorium could choose to only market public facilities, then it could have used the words "and/or," as it did when describing the purposes that auditorium district facilities must serve. *See* I.C. § 67–4902. Consequently, we hold that an auditorium district must build, operate, maintain, market, and manage a public facility. An auditorium district cannot simply market existing facilities within its borders.

The District argues, however, that this literal interpretation of I.C. § 67–4902 "effectively deletes" other relevant statutory provisions. The District argues that this interpretation conflicts with I.C. § 67–4912(f), which provides that the auditorium board has the power to "acquire, dispose of and encumber real and personal property, and any interest therein, including leases and easements within said district." It is evident that in order to "build" or "con-

struct" a public facility, as contemplated by I.C. § 67–4902, an auditorium district must, of necessity, be empowered to acquire some interest in real property. For this reason, we do not find our interpretation of I.C. § 67–4902 to be in conflict with the powers granted to auditorium district boards by I.C. § 67–4912(f). Although the District argues that a literal interpretation of I.C. § 67–4902 would prevent an auditorium district from purchasing an existing facility because it did not "build" the facility, the instant case does not ask this Court to determine whether an auditorium district can purchase an existing facility. We decline to address a hypothetical scenario not at issue in this case, as such a discussion would be mere dicta.

The District also argues that a literal interpretation of I.C. § 67–4902 would contradict I.C. § 67–4912(d), which provides that an auditorium board has the following powers:

> Except as otherwise provided in this chapter, to enter into contracts and agreements, cooperative and otherwise, affecting the affairs of the district, including contracts with the United States of America and any of its agencies or instrumentalities, and contracts with corporations, public or private, municipalities, or governmental subdivisions, *and to cooperate with any one (1) or more of them in building, erecting, marketing or constructing facilities* within the district. Except in cases in which a district will receive aid from a governmental agency, purchasing shall be accomplished in accordance with the provisions of chapter 28, title 67, Idaho Code.[1]

(emphasis added).

I.C. § 67–4912(d) does not contradict I.C. § 67–4902 merely because the former is written in the disjunctive. Rather, the two statutory provisions are clearly complementary: I.C. § 67–4902 defines "auditorium or community center district" and I.C. § 67–4912 enumerates the powers of the district's board. I.C. § 67–4912(f) confers upon an auditorium board the general power to contract. It makes clear that an auditorium

---

**1.** We have quoted I.C. § 67–4912(d) as presently codified. This subsection was amended in 2005.

However, the amendments are not material to the issues before this Court on appeal.

board can contract with corporations, municipalities, or governmental subdivisions in order to build, erect, market, or construct facilities within the district. In the course of conferring the power to contract, it would have been absurd for the Legislature to have used the conjunctive, requiring an auditorium board to enter into a contract for both the construction *and* marketing of a public facility.

■ Additionally, the District argues that a literal interpretation of I.C. § 67–4902 conflicts with I.C. § 67–4912(m), which provides that an auditorium board has the power to "promote any functions for said district, provided that said board shall not engage in operations that are inconsistent with the purpose of said district; and it shall be the policy of the board not to compete with existing facilities and services in the district, wherever practicable." The District argues that requiring auditorium districts to build new facilities would force auditorium districts to compete with existing facilities within the district. We are not persuaded that this proposition is true. To the contrary, it is evident that the purposes of the auditorium district act, to "serve the public need and use" and to "promote the prosperity, security and general welfare" of the populace served by an auditorium district, *see* I.C. § 67–4901, are advanced when an auditorium district constructs a public facility to fill a need not being fulfilled by existing facilities. Thus, an auditorium district may build a facility that does not exist in its district, such as a convention center.[2]

The District also urges this Court to consider I.C. §§ 67–4904(2) and (3), as they existed in 1998 when the District was formed.[3] Idaho Code § 67–4904 details the requirements and contents of a petition to organize an auditorium district. Neither party contests the formation of the District or suggests that the petition for organization was deficient in any way. Idaho Code §§ 67–4904(2) and (3) do not define the purposes, powers or functions of an auditorium district; rather, they address the requirements of a petition for organization. We conclude that the provisions of I.C. § 67–4904, as codified in 1998, do not reflect a legislative intent to expand the purposes or powers of an auditorium district.

Although this Court has previously stated that "[the] legislature has granted broad powers to auditorium districts," and "[t]he board of directors of an auditorium district is likewise granted broad powers . . . including exercising 'all rights and powers necessary or incidental to or implied from the specific powers granted,'" those powers are not without limitation. *See AmeriTel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 853, 119 P.3d 624, 628 (2005) (holding that an auditorium board is not granted the power to use public funds to campaign in a contested election). Today we identify another limit on the power of an auditorium district: an auditorium district does not have the power to simply market public facilities within its borders. For this reason, we reverse the judgment of the district court.

This decision is not a rebuke of the District's good faith efforts to improve the Pocatello and Chubbuck communities. While the District's board has clearly acted with only the best intentions for the Pocatello and Chubbuck communities, the relevant statutes do not permit us to decide this case based on good intentions. This decision does not have retroactive effect as to past activities of the District. Given the declaratory relief sought by AmeriTel the District will be barred from making future expenditures of tax revenues derived under the Auditorium District Act in any manner inconsistent with this opinion.

---

**2.** Further, I.C. § 67–4912(m) does not prevent an auditorium district from competing with existing facilities in a district. Rather, the statute provides that an auditorium district should avoid competition wherever practicable.

**3.** As amended in 1998, I.C. § 67–4904 provided, in relevant part, as follows:

The organization of a district shall be initiated by a petition filed in the office of the clerk of the court vested with jurisdiction, in a county in which the major part of the real property in the proposed district is situated. . . .

The petition shall set forth:

* * *

(2) A general description of the facilities to be constructed or marketing programs or both.

(3) The estimated cost of the proposed facilities or marketing programs or both.

**B. The District was not entitled to an award of attorney fees at the district court level.**

The District has cross-appealed the district court's denial of its request for an award of attorney fees pursuant to I.C. §§ 12–117, 12–121 and 12–123. As we conclude that the district court erred in granting judgment in favor of the District, the District was not entitled to an award of attorney fees.

**C. AmeriTel is not entitled to an award of attorney fees on appeal.**

 AmeriTel requests an award of attorney fees on appeal pursuant to I.C. § 12–117. An award of attorney fees under this statute is only appropriate "if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law." I.C. § 12–117. We are unable to conclude that the District has acted without a reasonable basis in fact or law, as the issues presented by this appeal are matters of first impression before this Court. Therefore, we decline to award AmeriTel attorney fees.

## IV. CONCLUSION

We conclude that the District is operating outside its statutory authority under I.C. § 67–4902. Accordingly, we reverse the decision of the district court and remand for proceedings consistent with this opinion. We award costs, but not attorney fees, to Ameri-Tel.

Chief Justice EISMANN, Justice BURDICK, and Justices Pro Tem KIDWELL and TINGEY concur.

